### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA
          PLAINTIFF,

                                        CASE #: 02-80863

V

                                        HON. NANCY G. EDMUNDS

JAY D. CAMPBELL
DONNY G. DOUGLAS
              DEFENDANTS.

| | |
|---|---|
| AUSA James Wouczyna | Harold Gurewitz (P14468) |
| U.S. Attorney's Office | Gurewitz & Raben, PLC |
| 211 W. Fort Street, Suite 2001 | Attorney for Jay D. Campbell |
| Detroit, MI 48226 | 333 W. Fort Street, 11th floor |
| | Detroit, MI 48226 |
| | |
| Vincent Falvo | Peter J. Kelley |
| Department of Justice | Attorney for Donny G. Douglas |
| Washington, D C | 407 N. Main |
| | Ann Arbor, MI 48104 |

### DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL
### PURSUANT TO RULE 29(C) FRCRP

Now come Defendants by their attorneys, and ask this Court to enter a Judgment of

Acquittal pursuant to FRCrP Rule 29(c) on Counts One and Two and for their reasons rely upon

the brief attached to this motion.

Respectfully Submitted,

| | |
|---|---|
| s/Harold Gurewitz | s/with consent of Peter J. Kelley |
| 333 W. Fort Street, 11th floor | Attorney for Defendant Douglas |
| Detroit, MI 48226 | 407 N. Main |
| (313) 628-4733 | Ann Arbor, MI 48104 |
| Email: hgurewitz@grplc.com | Email: pkelleylaw@sbcglobal.net |
| Attorney Bar Number: 14468 | Attorney Bar Number: P15822 |

Date: July 26, 2006

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
               PLAINTIFF,

                                    CASE #: 02-80863

V

                                      HON. NANCY G. EDMUNDS

JAY D. CAMPBELL
DONNY G. DOUGLAS
                DEFENDANTS.

| | |
|---|---|
| AUSA James Wouczyna | Harold Gurewitz (P14468) |
| U.S. Attorney's Office | Gurewitz & Raben, PLC |
| 211 W. Fort Street, Suite 2001 | Attorney for Jay D. Campbell |
| Detroit, MI 48226 | 333 W. Fort Street, 11th floor |
| | Detroit, MI 48226 |
| | |
| Vincent Falvo | Peter J. Kelley |
| Department of Justice | Attorney for Donny G. Douglas |
| Washington, D C | 407 N. Main |
| | Ann Arbor, MI 48104 |

DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(C) FRCRP

I.     INTRODUCTION

Defendants have filed a motion asking this Court to grant an acquittal pursuant to Rule 29(c) FRCrP after verdicts of guilty on Counts One and Two of the Indictment. Defendants previously filed a motion for judgment of acquittal at the close of the Government's case. The Court took the motion under advisement pursuant to Rule 29(b). Pursuant to Rule 29(c), the court may set aside the verdicts and enter an acquittal.

The evidence presented by the Government, when viewed in the light most favorable to the Government, does not support the jury's verdict that the Defendants' conduct violated 29 USC §186 or the Hobbs Act. This determination requires an interpretation of the statutes the Defendants are charged with violating and an application of those interpretations to the facts.

*United States v. Phipps*, 81 F3d 1056 (11th Cir., 1996).  (Reversing defendant's conviction for structuring in violation of 31 USC §5324 because the defendant's conduct did not violate the statute).  A rational trier of fact could not have found guilt beyond a reasonable doubt based upon a proper reading of the statutes and the evidence reviewed in the light most favorable to the prosecution.  *Jackson v. Virginia*, 443  US 307, 318-319 (1979).

II.   ARGUMENT

    A.   THIS COURT SHOULD GRANT DEFENDANTS' ACQUITTAL ON COUNT ONE PURSUANT TO RULE 29(C) BECAUSE OF THE GOVERNMENT'S FAILURE TO ESTABLISH EVIDENCE OF A CONSPIRACY WHICH HAD AS ITS OBJECT CONDUCT IN VIOLATION OF 29 USC §186.

Count One of the Indictment alleges a conspiracy in violation of 18 USC §371.  The alleged statutory object of the conspiracy is an unlawful agreement by the Defendants and Bill Coffey to violate 29 USC §186.  Count One alleges two objects in Paragraphs 3 and 4.  The Government did not rely at trial on the object alleged in Paragraph 3 describing a "thing of value" as an amendment to the National Agreement between GM and the UAW.  That was not presented to the jury and is no longer an issue in this case.  Paragraph 4 of Count One alleges that the thing of value demanded by the Defendants in violation of §186 is:

> the skilled trades and/or journeyman designation under Paragraphs 119 through 183 of the National Agreement dated November 2, 1996, and employment under that designation with associated wages and benefits for Gordon Campbell and Todd Fante, whom the Defendants knew were not qualified for such designation and employment under Paragraph 178 of the National Agreement, and where such designation and employment for Campbell and Fante was in violation of Paragraphs 152 through 154, 178 and 220 of the National Agreement dated November 2, 1996, its Addenda and Memoranda of Understanding, and Article 19, Section 1, of the UAW Constitution.

The government's theory of proof for Count One is "third-party liability". ("As we listened to the judge instruct us this morning, it is not required that the Defendants themselves

-2-

receive a thing of value". TR 6/26/06, Rebuttal Argument, p. 103, Jury Instruction 31). The Government argued that the things of value demanded and actually received by the defendants were the skilled trades and/or journeyman designations and employment received by the two individuals who got the jobs, Todd Fante and Gordon Campbell. The government did not allege, and there was <u>no</u> proof at trial, that either Defendant requested or demanded any job or financial benefit for himself, or that either Defendant received any tangible benefit from GM or benefitted financially, directly or indirectly, from employment of the two individuals. Further, there is <u>no</u> evidence that the individuals once hired failed to perform in their positions or that their employment was unwanted, superfluous, or unnecessary.

It is essential that the evidence establish that the object of the conspiracy charged in violation of the offense clause of 18 USC §371 is a violation of the alleged statute, 29 USC §186. *United States v. Minarik*, 875 F2d 1185, 1186-1187 (6th Cir., 1989). The evidence, however, when viewed in the light most favorable to the Government, did not establish that the Defendants' conduct or "object" was to demand "things of value" for themselves in violation of 29 USC §186.

    1.    **THE PLAIN LANGUAGE OF 29 USC §186 REQUIRES EVIDENCE THAT THE OBJECT OF THE DEFENDANT'S CONDUCT WAS THAT <u>THEY</u> WOULD RECEIVE A THING OF VALUE.**

29 USC §186 requires that a "payment, loan, and delivery of money and things of value" in violation of the statute, must be received or intended to be received by the defendant. *United States v Cervone*, 907 F2d 332, 346 (2nd Cir., 1990); *BASF Wyandotte Corp v Local 227,* 791 F2d 1046, 1048 (2nd Cir., 1990). The plain language of the statute requires that the benefit must be received by a representative of employees. *Arroyo v United States,* 359 U S 419 (1959) ("An examination of the legislative history confirms that a literal construction of this statute does no

-3-

violence to common sense." *id* at 424); *United States v Sun Diamond Growers,* 526 U S 398, 409

(1999)

29 USC §186(a) states:

> It shall be unlawful for any employer or association of employers
> or any person who acts as a labor relations expert, advisor, or
> consultant to an employer, or who acts in the interests of an
> employer to pay, lend or deliver or agree to pay, lend, or deliver
> any money or other thing of value –
>
> (1)      to any representative of any of  his employees who are
>          employed in an industry affecting commerce;

This subsection of the statute makes it an offense for an employer to pay something of

value "to any representative of any of his employees".

The subsection of the statute that is alleged as the object of the conspiracy charged in

Count One of the Indictment, (b)(1),  states as follows:

> It shall be unlawful for any person to request, demand, receive, or
> accept, or agree to receive or accept, any payment, loan, or
> delivery of any money or thing of value prohibited by subsection
> (a) of this section.

The plain meaning is examined by looking at the language and design of the statute as a

whole. *United States v Wagner,* 382 F3d 558, 607 (6th Cir., 2004); *United States v Ninety-Three*

*Firearms,* 330 F3d 414, 420 (6th Cir., 2003). The plain language of (b)(1) requires that the "thing

of value" which (b)(1) makes it unlawful to receive, etc, is that which subsection (a)(1) specifies

is prohibited for an employer to pay, lend or deliver, "**to any representative of any of his**

**employees".**  186(a)(1).  (emphasis added). When the language of the statute is clear or plain, it

is the obligation of the court to enforce it according to its terms. *United States v Ron Pair Enters,*

*Inc,* 489 U S 235, 241 (1989); *United States v One TRW Model M14, 7.62 Caliber Rifle,* 441 F3d

416, 427 (6th Cir., 2006).

-4-

Subsection (b)(1), therefore, requires that a representative of employees <u>must himself</u> <u>receive</u> the thing of value in order for his conduct to come within the criminal prohibition of the statute and to subject a representative of employees to criminal penalties.

Even *Himmel v. Ford Motor Co.*, 342 F3d 593 (6th Cir., 2003), relied upon by the Government as primary support for its third-party beneficiary theory of liability, and discussed below in this brief, states that when Congress enacted the statute:

> It was 'concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse of union officers of the power which they might achieve if welfare funds were left to their sole control', citing *Arroyo v. United States*, 359 US 419, 425-426 (1959).

342 F3d at 599.[1]

As a corruption offense, the plain language of §186 requires that the *actus reus* must be established by evidence of a union official's receipt of the "thing of value", or by like conduct because that is an objective measure of an abuse of the officials' position explicitly intended by the statute.

**2.    *DeBrouse* and *Carlock* Do Not Support the Government's Theory of Third Party Liability.**

In *United States v. DeBrouse*, 652 F2d 383 (4th Cir., 1981), one of the few cases relied upon the Government to support its third-party beneficiary theory, the defendant was convicted of several counts for violating 29 USC §186(b).  DeBrouse was the president of Local 639 of the Teamsters.  On two occasions, he convinced employers to award contracts for exterminating

---

[1] See also: *Kaiser Steel v. Mullins*, 455 US 72, 95 (1982); ("Title 29 USC §186 entitled Restitution on Financial Transactions, essentially prohibits an employer from paying bribes to his employees, the representatives, or the union."; *United States v. Lanni*, 466 F2d 1102, 1108 (3rd Cir., 1972).

work to a company in which he held a secret interest.  According to the Court, "there was ample proof that transactions were not conducted in the ordinary course of business."  *Id* at 387. Further, "DeBrouse indirectly benefitted through his concealed interest in the firm." *supra*.

On a separate count, DeBrouse was convicted of violating the same statute based on evidence of payments that he caused to be made by an employer to "his nominee" of $200 per week from November, 1973 through December, 1974.  The recipient, Caprio, was a ghost employee; he performed no services.  When the payments to Caprio stopped, complaints were made to DeBrouse and the employer "experienced labor troubles".  *supra*.  The court in *DeBrouse* relied on Hobbs Act extortion case law, like *United States v. Green*, 350 US 415 (1956), which found receipt by a third party sufficient because the coerced employment was for imposed, unwanted, superfluous and fictitious services of laborers.  *Green*, however, interpreted the Hobbs Act, 18 USC §1951, unlike §186, to not require receipt of anything by a defendant. (This view of the Act is subject to the recent decision in *Scheidler v NOW*, *post*, Issue B) The Hobbs Act is a property offense and its gravamen according to *Green* must include loss to the victim.  In contrast, as a "corruption" offense, §186 requires proof of the receipt of a benefit by the defendant.  As a "corruption" offense, §186 requires that there must be evidence that the defendant received something of value.  It is insufficient if the evidence only establishes that the alleged victim-employer paid or gave up some thing of value to someone else.  That is not what this statute makes an offense.

Similarly, in *United States v Carlock*, 806 F2d 535 (5th Cir., 1986), the court relied upon the holding in *DeBrouse* to conclude that in the context of a wide spread pattern of corruption in the relationship between the defendants and employers, §186 was violated by receipt of payment by someone at the direction of the defendant.

-6-

In *Carlock*, the defendants objected to a jury instruction that told the jury that the defendant could be found to have violated the statute if "he knowingly and wilfully requested or demanded that the alleged payment, loan or delivery be made to a third person at his behest." *Id* at 554. The court followed *DeBrouse* which it says "found the required value in the power exacted by the official to direct payments to others." *Id* at 555. Like *DeBrouse*, the *Carlock* opinion improperly relied on Hobbs Act case law to hold that §186 does not require receipt of anything of value by the defendant. *Id* at 555.

The *Carlock* opinion does not endorse the third-party beneficiary theory espoused here by the Government. The court concluded in *Carlock* that the "thing of value" received by the defendant is the coercive "power to direct payments to others". *supra*. That conclusion does not stand for the proposition argued to the jury here by the Government or explained in Jury Instruction 29 that a receipt by a third party under a third-party beneficiary theory is sufficient to satisfy the statute. It is limited to a different theory, that the power to direct payments to the defendant is a thing of value to the defendant. That simply is not the third-party beneficiary theory on which this case was sent to the jury.

It is also the Defendants' position that *DeBrouse* and *Carlock* simply but improperly expand §186 beyond the scope of its clear language to incorporate conduct not intended to be covered by the criminal prohibition in §186 when it was enacted by Congress. While the arguments made by the Government may suggest policy reasons for Congress to enact further amendments to labor laws to prohibit the kind of conduct at issue in *DeBrouse* and *Carlock*, §186 does not reach jobs and employment for third parties. More pertinently, that is not offense for which the Defendants in the case before this Court have been charged or wrongly found guilty.

-7-

**3.**      *HIMMEL V. FORD MOTOR COMPANY* CAN NOT BE READ TO SUPPORT THE GOVERNMENT'S THIRD-PARTY BENEFICIARY THEORY.

First, the facts of *Himmel v. Ford Motor Co.*, 342 F3d 593 (6th Cir., 2003), although arising in the context of complaints concerning union referrals and hiring practices at a Big 3 auto company, are only superficially comparable with those in the present case.  The plaintiff in *Himmel* complained about union referrals for hire by the Ford Motor Co.  As described in the opinion, the practice of referrals about which Himmel complained was that 10% of Ford's nationwide hiring would come from referrals from UAW officials, passed on to Ford World Headquarters from the UAW International.  As described, this aspect of Himmel's 3-part complaint is precisely the practice which the Government repetitiously in the Campbell/Douglas trial emphasized to the jury was commonplace, acceptable, and not anything about which there could be any legal complaint.  ( At page 26 of the Closing Argument transcript, the Government argued in its closing that Mark Hawkins testified "General Motors never told him they wouldn't take a recommendation from him because he's a union official". TR 6/26/06. The Government also argued that  GM did not prohibit referrals, *Id* pp. 122-123).  Nevertheless, this aspect of Himmel's complaint was simply that referrals, detached from the embellishments of the Campbell/Douglas indictment allegations of qualifications or preferences, were violations of the Public Policy established pursuant to 302.  The United States' position in this case, therefore, would mean if applied to facts of *Himmel* that Himmel's referral complaint was unfounded.

Second, Himmel complained about the hiring of a specific individual by Ford Motor Co., Mr. Forste, not because he displaced anyone, but because he was a referral.  According to the opinion, Himmel refused to hire Forste and instead promoted two current Sharonville employees to fill positions without Ford requiring their completion of a skilled-trades test. *Id* at 596.  According to the opinion, nevertheless, plant officials hired Forste for another position without

-8-

displacing Himmel's own promotees. Himmel did not specifically allege in his lawsuit that Ford's conduct was illegal. *id* at FN 2.

Third, Himmel objected to a settlement reached with two individuals who sought to transfer to the Sharonville plant where Himmel was a supervisor.  The two individuals apparently complained that they were qualified and eligible for the positions that Himmel himself filled by internal promotions.  The two individuals filed a complaint with the NLRB and eventually were given positions at the Sharonville plant and received settlements for full back pay.  Himmel objected to the settlement.  Part of the basis for his objection was that an individual who was involved in the settlement was related to one of the two grievants,  Mr. Kuykendall.

Perhaps, the Government might contend that this part of the Himmel factual scenario is reminiscent of the Government's evidence at trial concerning Mr. Wilkerson and Mr. Bradley who the Government contended at trial  were eligible for positions as journeymen and were working at the plant at the time that Gordon Campbell and Todd Fante were hired.  It appears, however, that the complaints in *Himmel* were not at all the same.  It was Mr. Himmel who first filled three vacancies with three in-plant employees, and then complained that one of the transferees, Mr.  Kuykendall should not have received a position and a settlement of his grievance.

Fourth, the primary holding in *Himmel* was to reverse the district court decision granting summary judgment on Himmel's "Greeley" or state cause of action whistle-blower complaint which was granted by the district court because it believed that Himmel's own illegal conduct barred his action for wrongful discharge in violation of public policy.  The *Himmel* opinion's discussion of the interplay between the state whistle-blower action and §302 is murky at best and

*dicta*.

Fifth, *Himmel* does not address the "thing of value" or "receipt" elements of §186.  One of the elements of the Greeley cause of action as defined by the applicable law required a determination that there is a clear public policy.  Whether or not §302 established a "clear public policy" that specifically applied to these facts was not at issue in *Himmel*, however, because the defendant Ford Motor Co. conceded on appeal that "§302 of the LMRA embodies sufficiently clear public policy to serve as the foundation for a wrongful discharge claim".  *Id* at 599.  The court's opinion on this point does not establish any precedent or helpful analysis explaining the application of  §302 to these facts.

Sixth, the court went on to discuss the only Greeley element at issue on appeal concerning "jeopardy", the element which concerned whether the dismissal of *Himmel* complained about in the lawsuit would jeopardize the public policy of the statute as explained by Ford Motor Company's concession.

The court's framework for this analysis included: determining what kind of conduct is necessary to further the public policy of the statute; deciding whether the employee's actual conduct fell within the scope of conduct protected by that policy; and considering whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal. It was not necessary for the court to discuss the application of the elements of §302 as a statement of public policy because it  was conceded and not litigated or decided by the court.

The court concluded more generally that reporting violations within the scope of the public policy is essential to further its purpose.  An employee, therefore, need only have a good faith belief that his complaint falls within the scope of the protection described by the policy. According to the court, the employee does not have to establish that what he complained about

-10-

was a violation of the law.

*Himmel* does not stand for the proposition that a "third-party beneficiary" exception to 29 USC §186 applies to define the elements of the statute in a criminal prosecution; or, that the court is inclined to consider it. It does not provide any gloss on the interpretation of the statute which could serve as a basis to  find anything other than receipt by the defendant of a thing of value to be sufficient in order for a defendant's conduct to come within the scope of the criminal prohibitions of §186.

### 4.   THIS COURT'S PRIOR ANALYSIS OF COUNT ONE SHOULD BE ACCORDED PRECEDENTIAL TREATMENT IN DECIDING THIS ISSUE.

The prior finding by this Court that the designation of Fante and Campbell as skilled trades and their subsequent employment are not  "things of value" <u>for the Defendants</u> within the meaning of the statute, *United States v Campbell,* 291 F Supp 2d 547 (ED Mich 2003), should be accorded weight as law of the case.  It was left undisturbed by the Sixth Circuit's decision remanding this case.  The Sixth Circuit's opinion in this case never addressed the issue of things of value.  It held only that the government did not have to prove a violation of §186, the underlying substantive offense, if it proceeded under a theory of conspiracy to defraud the United States.  *United States v Douglas*, 398 F3d 407, 413 (6th Cir 2005).

The Court of Appeals did not reject this court's analysis.  It avoided it.  The Court of Appeals' reliance on cases construing the conspiracy to defraud the Government provision of 18 USC §371 does not fit the allegations of this Count (which alleged a conspiracy to violate a statute) and makes it difficult to understand the court's rationale.  A common sense reading of that part of the Opinion, however, is that it was the appellate court's view that it was simply premature to pass judgment on the sufficiency of the Indictment because of the uncommon allegations in Count One based on 29 USC §186 and because the standards for pleading a

-11-

conspiracy offense are so low.

The evidence for Count One as reviewed in light of the plain meaning of the statute and in the light most favorable to the prosecution does not establish evidence from which the jury could have found that the Defendants received any thing of value as required by the plain language of the statute. This Court should, therefore, grant them an acquittal pursuant to FRCrP Rule 29(c).

**B.  THIS COURT SHOULD GRANT DEFENDANTS' ACQUITTAL PURSUANT TO RULE 29(C) FRCrP ON COUNT TWO BECAUSE THE EVIDENCE WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO THE GOVERNMENT FAILS TO SUPPORT THE ELEMENT OF "WRONGFULNESS" REQUIRED TO PROVE THE OFFENSE.**

Count Two of the Indictment alleges that the Defendants conspired from August, 1995 through at least August 4, 1997, the dates of hire of Gordon Campbell and Todd Fante by General Motors,

> to obtain from GM property, to-wit: the skilled trades and/or journeyman designation under Paragraph 119 through 183 of the National Agreement dated November 2, 1996 and employment under that designation with associated wages and benefits for Gordon Campbell and Todd Fante, whom the Defendants knew were not qualified for such designation and employment under Paragraph 178 of the National Agreement, such consent having been induced from wrongful use of fear, economic harm.

(Indictment, Count Two, ¶2).

**1.  *ENMONS* REQUIRES THAT THE OBJECTIVE MUST BE "WRONGFUL"**

In order for the jury to have found the Defendants guilty on Count Two, it was essential for it to find that the Defendants' demand was "wrongful"; *United States v Enmons,* 410 U S 396, 399 (1973); *United States v Cusmano,* 729 F2d 380, 382 (6th., 1984). This Court defined wrongful use of fear in Jury Instruction #41 and told the jury that:

> In this case, you may conclude that the Defendants' conduct was wrongful only if you find beyond a reasonable doubt that the

-12-

> Defendants intentionally demanded skilled trades employment and
> designations which were contrary to the provisions of the National
> Agreement or the UAW Constitution.

It is not the wrongful use of force, in this case alleged wrongful economic coercion, which can

be a violation of the statute. There can only be sufficient evidence found if the wrongful use of

economic coercion is used  to accomplish a wrongful objective.

The phrases "legitimate union objectives" or "legitimate collective-bargaining demands"

were fashioned by the Supreme Court in *United States v Enmons*, 410 US 396, 400, 408 (1973),

which held that the Hobbs Act does not apply to the use of coercive demands to achieve

legitimate labor ends.  In *Enmons,* the defendants sought a new collective bargaining agreement

including higher wages.  The government argued that use of picket line violence to achieve that

objective was extortion because it was simply the obtaining of property from another by

wrongful use of actual or threatened force or violence. According to the *Enmons* Court however,

the term "wrongful' has meaning in the Act only if it limits the statute's coverage to those

instances where the obtaining of the property would itself be 'wrongful' because the alleged

extortionist has no lawful claim to that property".  410 US at 400.  *Enmons* made clear that the

Hobbs Act does not apply to the use of force to achieve legitimate collective bargaining

objectives.  *Id.* at 404.

The Hobbs Act prohibits the use of force or violence to obtain personal payoffs or

"imposed, unwanted, superfluous, and fictitious services of workers, [f]or in those situations, the

employer's property has been misappropriated." *Id*. at 400.  Further, the court in *Enmons*

carefully limited its prior holding in *United States v. Green,* 350 US 415 (1956), because *Green*

did not rely solely on facts of an employer-employee relationship as in *Enmons.  Enmons*, 410

US at 408.  The alleged extortion in *Green* consisted of attempts to obtain "imposed, unwanted,

-13-

superfluous and fictitious services of laborers." *Id* at 498.  Finally, the *Enmons* Court held that as

a criminal statute, the Hobbs Act must be strictly construed and any ambiguity must be resolved

in favor of lenity.  *Id.* at 411.  That admonition is particularly apt in this case, because, as the

*Enmons* Court explained "a broad concept of extortion ... is not easily restricted [, and] ... could

cover all overtly coercive conduct in the course of an economic strike, obstructing, delaying, or

affecting commerce.  *Id* at 410. According to the Court in *Enmons,* therefore, a labor demand can

only be "wrongful" if "the union officials had <u>no</u> legitimate right to [make the] demand". *Id* at

409 (emphasis added).

> **2.    NEITHER *UNITED STATES v. RUSSO* OR  *UNITED STATES v. CUSMANO* ESTABLISH
>          A PER SE RULE THAT ANY EVIDENCE OF A CONTRACT DEMAND VIOLATION
>          MAKES THE DEMAND WRONGFUL.**

The facts of this case are distinguishable from the facts and holdings in *United States v*

*Cusmano,*729 F2d 380 (6th Cir., 1984) and United *States v. Russo*, 708 F2d 209 (6th Cir., 1983).

The facts of *Cusmano* and *Russo* are essentially the same.  Neither case relies on

evidence of a dispute about the meaning or interpretation of a union National Agreement. In

*Cusmano*  and *Russo*, employees presented grievances including one to have the company make

payments to the Teamsters' Health and Welfare Fund, as required under a Local Cartage

Supplement.  After two general employee meetings called by management, the drivers voted

down proposals to deduct percentages of their pay to cover the required employee health and

welfare contributions.  The company president then called the drivers into his office, one by one,

and, with the assistance of a reputed mafia figure, procured their agreement to a 11% "service

charge". The existing Local Agreement expressly required the company to make the payments

out of its own funds. *Id* at 215 The unlawful concession which shifted the payment from the

employer to the employees was "not the result of collective bargaining" . *Cusmano,* at 383.

### 3.    *SCHEIDLER v. NOW* REQUIRES THAT PROPERTY MUST BE OBTAINED.

The Hobbs Act requires evidence that the object of the Count Two conspiracy offense was to obtain possession of property from General Motors rather than "to obtain regulation of the fate of" the property. *Scheidler v. NOW*, 537 US 393, 403 (2003). The Hobbs Act requires "that a person must 'obtain' property from another party in order to commit extortion." *Id* at 404. In order to violate the Hobbs Act according to *Scheidler*, the defendant must obtain or attempt to obtain something of value which he can exercise, transfer or sell. *Id* at 405. In *Scheidler*, the court found it unnecessary to "trace what are the outer boundaries of extortion liability under the Hobbs Act."; citing *Green*, *supra* and *Carpenter v United States*, 484 U S 19,27 (1987). It also concluded that when enacted, the Hobbs Act was intended to limit its reach to property offenses and was not intended to include the separate common law offense of coercion. The *Scheidler* court stated that the "crime of coercion which more accurately describes the nature of petitioner's actions involves the use of force or threat of force to restrict another's freedom of action." *Id* at 405. The court in *Scheidler* construed the acts of the petitioner's to restrict access to abortion clinics, to prevent doctors from carrying out their business and prevent the businesses from operating, as "threats and acts of force and violence to dictate and restrict the actions and decisions of businesses;" but not to obtain property. *Id* at 406.

### 4.    THE EVIDENCE IS INSUFFICIENT TO ESTABLISH A WRONGFUL OBJECTIVE TO OBTAIN PROPERTY.

First, in order to find for purposes of this Rule 29 motion that the Defendants' conduct in this case was to obtain a wrongful objective, it is necessary for this court to decide, within the meaning of *Scheidler,* that there are facts from which the jury could have concluded beyond a reasonable doubt that the defendants themselves obtained something of value which they could exercise, transfer or sell. However, what is missing from the evidence, necessary to distinguish

-15-

obtaining property from facts which would establish only a deprivation of the victim's right or property, is what has been described by one post-*Scheidler* decision as the powerful evidence of a "motive ultimately to profit by cashing out the value of the property right". *United States v Gotti,* 2006 U S App Lexis 17430, at 76 (2nd Cir., July 12, 2006).  There is a total absence in this case of evidence that the defendants profited themselves in any way from the jobs for Todd Fante and Gordon Campbell.

Second, this court must then conclude that the defendants' object was wrongful, that is that the positions filled by Gordon Campbell and Todd Fante were for no legitimate purpose and were for positions that were unwanted, superfluous to GM and were for fictitious labor services.

While the Government pressed the claim at trial that the individuals hired were not as qualified as others who could fill the positions, there is no evidence from which to conclude that Gordon Campbell and Todd Fante did not have skills to work for General Motors or that they did not perform.   Whether the value of their employment was what might have been obtained from someone else, even others such as Wilkerson or Bradley, cannot possibly form a factual basis upon which to conclude that the objectives of demanding their employment were for no legitimate purpose and wrongful within the meaning of the Hobbs Act.  That kind of nuanced distinction between  jobs that are of value or those that are not for full value, is clearly beyond the scope of the Hobbs Act intended by Congress.

It was the Government's theory at trial that Donny Douglas and Jay Campbell, together with Bill Coffey, conspired to obtain the jobs for Gordon Campbell and Todd Fante which they knew were "wrongful", for two reasons.  First, the Government's theory asserted that Donny Douglas and Jay Campbell knowingly required GM to hire Gordon Campbell and Todd Fante contrary to hiring preferences specified by the National Agreement.  Second, according to the

-16-

Government's claims, the Defendants knew that both Fante and Gordon Campbell were not qualified for skilled trades vehicle builder positions.  Neither claim was supported by sufficient evidence to allow the jury to deliberate and conclude that the Defendants' conduct was "wrongful"- that is, for "no" legitimate purpose-  within the meaning of the Hobbs Act as interpreted by *Enmons*, *supra*.

The Government's theory that the hiring by GM of Gordon Campbell and Todd Fante was in violation of the "preference" provisions of the GM/UAW National Agreement, Paragraphs 152-154, 178,220 and Appendix A, is not supported by the Agreement itself. Defendants do not dispute that the Agreement sets forth rules for hiring.  Those rules, however, impose obligations on GM, the employer.  Pursuant to the National Agreement, Paragraph 8, it is GM's obligation to exercise its ultimate judgment as to who to hire.  It is also GM's sole prerogative pursuant to the Agreement to exercise its unfettered discretion to terminate any new employee within the first 30 days of his/her employment for any reason or no reason. National Agreement, Paras. 56-59  While the union may bargain with the company for its agreement to hire specified numbers of individuals for various skilled or production positions, it is ultimately the decision of the company to hire that number or more in its sole discretion.

The Government's examination of its witnesses concerning their discussions with Bill Coffey, Donny Douglas or Jay Campbell about the hiring of Gordon Campbell, Todd Fante, and Michael Freer, focused upon qualifications, 302 and claims the Defendants threatened to hold up agreements.  There was no testimony from any witness that Donny Douglas, Jay Campbell or Bill Coffey ever made any demand to any representative of General Motors to hire Gordon Campbell, Todd Fante, or Michael Freer prior to Mr. Wilkerson, Mr. Bradley or any other individual.  There was no testimony from any witness that any GM representative ever expressed

-17-

any concern to Bill Coffey, Donny Douglas or Jay Campbell that hiring of Gordon Campbell, Todd Fante, or Michael Freer would in any way interfere with GM's obligation to hire anyone pursuant to the National Agreement.

As its second argument in support of its theory that the Defendants used economic coercion to obtain the "wrongful" objective of the hiring of Gordon Campbell and Todd Fante, the Government argued that the two new hires were unqualified pursuant to the National Agreement and, therefore, the "demands" were wrongful within the meaning of the Hobbs Act.

The evidence concerning their continued employment after their date of hire must also be considered because the National Agreement establishes the unfettered right of General Motors to terminate employment after hire.  There is no evidence in the record of any adverse action ever having been taken against either Gordon Campbell or Todd Fante.  The Government's witness, James Rhadigan testified that he never limited any subordinate from taking any kind of action against either individual.

There is no case law precedent for the Government's claim based on the evidence in this case that a dispute about job qualifications for two or three individuals can satisfy the wrongfulness requirement of the Hobbs Act [2].  There was no evidence presented at trial that the Defendants ever attempted to change the terms of the National Agreement.  Even if one is to take the Government's position as a given, that Gordon Campbell and Todd Fante were not qualified, their hiring did not and could not modify the National Agreement. The Government's argument of "wrongfulness" is at its core a  dispute about interpretations of contract terms. If this Court

---

[2]  In the now moot Count One, Paragraph 3, the Government made the illogical allegation that hiring someone who did not fit the criteria of a contract term amended the contract; not that it was in violation of the contract.  Article XIX of the UAW Constitution stands squarely for the proposition that the parties can not amend the National Agreement.

-18-

were to hold as a matter of law that because union demands for hiring violate such contract terms as those describing the detailed criteria for journeyman qualifications or preference for hiring, they then are for "no legitimate purpose" and wrongful within the meaning of *Enmons* and the Hobbs Act, that application of the federal extortion law will create a criminal monster in the everyday administration of labor-management relations.

## IV.    CONCLUSION

In *Scheidler*, the court recognized that the Hobbs Act serves two seemingly antithetical purposes.  On the one hand, in the words of the statute "it manifests . . . a purpose to use all of the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."  *Id* at 408.  At the same time, relying upon *Enmons*, the court observed that the statute cannot be expanded beyond the scope enacted by Congress because it is a criminal statute and must be strictly construed and because "any ambiguity must be resolved in favor of lenity."  *Id* at 408.  In *Scheidler*, the court resolved the tension between these two principles and the arguments before it that the facts supported either extortion or coercion to limit application of the statute, because if the distinction were to be abandoned, "such a significant expansion of the law's coverage must come from Congress and not from the courts."  In *Enmons*, the court limited the scope of the statute to only "wrongful" objectives.  In *Green*, the court limited the statute to facts that did not include an employer-employee relationship.  Similarly, in *Russo* and *Cusmano*, the court relied on conduct that was not collective bargaining.

Here, if demands for jobs by union officials to an employer are to be considered extortion because the employees were not fully qualified, such expansion should come from Congress. It has previously spoken when enacting the Hobbs Act through 18 USC §1951(c), which states that

-19-

the Hobbs Act " . . . shall not be construed to appeal, modify or affect various sections, including

29 USC §157, guaranteeing the right to collective bargaining and 29 USC §158 defining unfair

labor practices by labor and management."  No precedent supports the conclusion that the

evidence presented to the jury in this case establishes that demands made in the employer-

employee collective bargaining context are Hobbs Act violations.

When viewed in the light most favorable to the Government, the evidence offered in

support of Count Two fails to establish that the objects of the Defendants' conduct was

wrongful.  This Court should grant acquittal on Count Two.

Respectfully Submitted,

| | |
|---|---|
| s/Harold Gurewitz | s/with consent of Peter J. Kelley |
| 333 W. Fort Street, 11th floor | Attorney for Defendant Douglas |
| Detroit, MI 48226 | 407 N. Main |
| (313) 628-4733 | Ann Arbor, MI 48104 |
| Email:  hgurewitz@grplc.com | Email: pkelleylaw@sbcglobal.net |
| Attorney Bar Number:  14468 | Attorney Bar Number: P15822 |

Date: July 26, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2006, I electronically filed the foregoing paper with the Clerk of
the Court using the ECF system which will send notification of such filing to all parties of
record.

s/Harold Gurewitz (P14468)
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1100
Detroit, MI 48226
(313) 628-4733
email:  hgurewitz@grplc.com